Judge Eocicner,
delivered the opinion of the court.
In the fall of 1828, Williamson being the owner of a bay mare, swapped her with Mark Millian fora black mare.
At the the time the exchange took place, Tudder, then a constable of the county in which the parties resided, had two small executions in his hands against Millian, which he levied on the hay mare in the possession of Millian. On the same day, finding the black mare in the possession of Williamson, he levied them on her also, and carried them off. After the exchange had taken place, he received a third execution against Millian, which he also levied on each of the mares.
On the execution of bonds for the delivery of the property, to the officer on the day of sale, by Millian with Orchard as his surety, both mares were delivered to Millian; who, to indemnify Orchard, permitted him to keep possession of them. Previous to the day of sale, Williamson, without the consent of Millian or Orchard, obtained possession of the black mare and carried her to another county; but Orchard having pursued him, regained possession; and on the day of sale, delivered each mare (o the officer. He sold the bay mare first, for a sum more than sufficient to discharge the two executions which the constable had received, previous to the exchange between Millian and Williamson. He-then sold the black mare, under the third execution; whereupon, Williamson as an infant, by Detheridge his next friend, instituted an action of trover and conversion against Orchard; claiming, in his declaration, damages for an illegal *559 conversion of each of the mares. Orchard pleaded not guilty; and ón the trial of the cause, there was a verdict of §30 in favor of Williamson, which court set aside, at the instance of Orchard, and granted a new trial.
On a second trial, a verdict was returned for §20. Orchard again made a motion for a new trial, upon the grounds that the court erred in refusing to instruct the jury, as moved for by him; and by giving instructions, as moved for by Williamson; and that the verdict is contrary to law and evidence. But the court overruled it, and entered judgment in pursuance of the verdict; to reverse which, Orchard prosecutes this writ of error; assigning for error, that his motion for a new trial was improperly overruled.
On the trial, Tudder, the constable, was introduced as a witness for the plaintiff in error. He was objected to by the defendant in error, upon the ground of his alleged interest, but the objection was overruled, and an exception taken to the opinion of the court. It has been urged by the counsel for Williamson, that if Tudder’s testimony be disregarded, the opinion of the circuit court, overruling the motion for a new trial, was unquestionably correct. We shall therefore inquire, in the first place, whether the admission of his testimony was erroneous. To prove that it was, the case of M'Ghee vs. Ellis and Browning IV. Littell 244, has been cited. It has been insisted on, that if an officer who levies on and sells property not subject to the execution, which is thereafter recovered from the purchaser by the true owner, is liable to the purchaser, it follows, that the principle on which such responsibility is based, would, by analogy, shew, that Orchard (who it is said should be considered as the bailee oí Tudder) if subjected to damages in this action, would be entitled to indemnity from Tudder, who is, therefore, interested in this suit. We do not perceive the supposed analogy, and are satisfied that the conclusion cannot be maintained upon the principles of reason. In the case referred to, the liability of the sheriff is made to rest on grounds which cannot be applied to the circumstances of this case. It is there said that the purchaser has a right to presume that be has done *560 his duty correctly, and to infer from the office, the execution and the sale, that he buys a good title; and if he does not, the sheriff has so far violated his duty, as to deceive him. But in this case, Orchard can have no such claim against Tudder. He was not his bailee. Tudder has violated no duty to his injury. The property had been levied on under executions against Millian, who, wishing to retain the bay mare until the day of sale, and to obtain possession of the other mare, applied to the officer to permit him to execute a delivery bond. The bond was executed at his instance and for his benefit, with Orchard as his surety, who joined in the bond, at the request, not of the, constable, but of his friend Millian, to whom the property was delivered. A sale of property, under execution by a sheriff, representing to those present that he has a right to make it, shall be sufficient, according to the doctrine in the case of M‘Ghee vs. Ellis and Browning, to raise an implied warranty of title. He is considered as soliciting persons to purchase, and representing to. them that he has a valid title to convey. But how can it be said that Tudder invited Millian to execute a delivery bond, or that he induced the plaintiff in error to join as his surety? Millian had at least, as good, if not a better opportunity of knowing what his right to the property was, than the officer had. Whether it was proper for Tudder to deliver possession of the black mare to Millian, when he had taken her from the defendant in error, it is not important here to inquire. Be that as it may, neither he nor the plaintiff in error have any right to complain of it.
We are, therefore, of opinion, that Tudder was not an incompetent witness.
It remains to be considered whether a new trial ought to be awarded. .
Whether the constable had a right to sell the black mare under the execution which he had not received until after Millian and the defendant in error had made the exhange, is a question, in the solution of which, we apprehend not the least difficulty; but it is not presented in the present record, and to decide it would be premature and useless. But the authority on the part ofthe constable, to levy the two executions *561 which first came to his hands, upon both of the mares, is directly involved; because, if he had not authority to levy on both, it must result, from the fact, that the defendant in error, being the owner of one or the other of them, she was not subject to those executions; and, in that event, it is clear, that he was enti tied to a verdict.
a wh,-jst an officer has ?n execution ága/nst'hhn8 exchangehor-ses with !?8 execution. 6
But if the levy made by the constable was valid, Williamson had no right to demand the possession of either mare, until the money was made by the sale, to discharge the two executions which were rightfully levied. And having no right to the possession, Orchard cannot be properly charged with an illegal conversion, for delivering possession of property to the officer, for the delivery of which he was bound, by his written obligation. Were the two mares then subject to the two executions refeired to? That they were, we are satisfied. By the provisions of the statute on the subject, all the property of a defendant in an execution, which is subject to execution, is bound by it, from the time of its delivery to the sheriff. That the black mare, being the property of Millian, and in his possession, in the county of Madison, whilst the officer had in his hands two executions against his property, was subject to them at the time Tudder made the levy, cannot be questioned, unless by the transfer of her to the plaintiff in error; the lien, which the law creates, had been released; a position which has not been even contended for. But the argument urged is,that the levy on the bay mare, made by the constable previously to that on the black, was an affirmance of the exchange between Millian and the defendant in error, and rendered that valid which had been previously voidable at the option of the plaintiff in the executions, but not void. This argument seems to be based on the supposition that the constable had a right to levy on either one of the mares, but not on both; a position which is considered as entirely untenable. Both of thern, if necessary for the payment of the two executions mentioned, were properly levied on, and might have been sold, if the one first sold, had failed to bring the amount required. -Suppose the levy had been made on the black mare first, would the contract of exchange between Millian arid Williamson have *562 been thereby vacated, so that the latter would have had a right to demand from the constable, the bay mare, after he had taken her into possession under levy? it is clear, that he would not. Williamson would, in such case, have his action against Millian, for passing property to him which-had been subsequently taken and sold by a paramount claim; but he would have no more right to the property, with the title to and possession of which he had parted, than he would have had to it, if, instead of receiving by way of exchange the black mare, Millian had assigned him a note on some insolvent man; for, in either case, Millian would be presumed to have acted in good faith, until the contrary should be made to appear. it is, to be sure, a misfortune for an individual to lose the property parted with, as well as the consideration which he supposes he has received; but his misfortune, in such a case, is similar to (hose which must be necessarily encountered in many eases, by persons contracting for property with men who hav-o not a valid title to it, and may be unable to make compensation for the injuries sustained. Suppose that Millian had given to Williamson, in the exchange, fifty dollars as an estimated difference in the value of the two mares, aud so soon as he got the bay mare had swapped her to a third person, who had exchanged her with a fourth, for another horse; and under such circumstances, the constable bad levied on the mare in Williamson’s possession; would he, in such case, have a right to retake the bay mare? It is evident that be would not. And why? Because, although once the owner of her, he had parted with his title to her, and delivered possession; and Millian would then have an unquestionable right to dispose of her, as he might think proper. In this case he had not sold her, but she was taken under execution by an officer of the law, and the right of the plaintiff in such execution to have her sold, if necessary to the discharge of his executions, was as undeniable, as would be the right of the individual, in the case put, to retain possession of her as his own property.
But, for the defendant in error, it has been argued, that as he sued as an infant, by his prochein amie, and as the fact of his infancy was not controverted by the plaintiffin error-, it must be considered as admitted j *563 and that, under that view of the case, the verdict was correct; even should it be conceded, that the other points are against him; because, being an infant, had a right to elect a disaffirmance of the contract. After the facts stated in the commencement of this opinion had been proved, which constituted all the evidence in the cause, the counsel of Orchard moved the circuit court to instruct the jury, that if they should find from the evidence, that Millian was, at the time the two executions above refered to came to the hands of Tudder, the owner of the black mare; and that whilst the executions aforesaid, were in his hands, as constable, Millian swapped said black mare to Williamson, for the bay, and took her into his possession; and that Tudder was, at the time, constable of Madison county, and that he levied said executions on both of said mares; and that Orchard became surety for Millian in the delivery bonds, and in compliance therewith, delivered the mares to Tudder, and that Orchard had nothing more to do with said mares, they ought to find for him. The court refused to give the instructions so moved for, but instructed the jury, that if they found that Williamson was an infant when he and Millian made the exchange spoken of, and still continued to be an infant, he had a right to elect to avoid his contract, and to recover the value of the bay mare, from any person who had her in possession after the exchange and had refused to deliver her to him; provided they were also of opinion, from the evidence, that the mare, previous to the exchange, was the property of Williamson.
That the contract of an infant, whereby he swaps his horse to another, may be avoided, is undeniable; but we are, nevertheless, of opinion, that the court erred, in refusing to give the instructions moved for by the plaintiff in error; and, consequently, in giving that which was given. There was not a word of evidence on the subject of infancy; and the omission of Orchard to contest his right to sue as such, cannot be received as evidence of the fact, so as to justify the instruction given. By the plea of “not guilty,” and going to trial on the issue formed on it, the plain-tiffin error waived all right which he might have had at an earlier stage of the cause, to contest Williamson’s right to sue by prochcin amie; but he did not, *564 thereby, admit his infancy, so as to justify the instruction given. If the fact existed, it was incumbent on Williamson to introduce proof of it; for, admitting that he had actually made the exchange, his infancy was a link in the chain of his proof, absolutely necessary to make out his title. By the plea of “not guilty,” Orchard put him on the proof of every fact necessary to shew his right to recover.
Plaintiff sues as an infant, defendant (nut contesting his infancy) pleads the general issue, if infancy of plaintiff be a link in chain of proof, necessary to make out his title, he must prove it.
Coperton for plaintiff; Turner for defendant.
Upon examination, we have not been enabled' to find any authorities directly in point. The case of an executor declaring on a cause of action arising in his own time, may be considered as somewhat anala-gous. If he brings the action in his representative capacity, merely; if the defendant mean to dispute his right to sue, as such, he must do so by plea in abatement; and cannot make the objection, under a plea in bar. But if the plaintiff declare on a cause of action arising in his own time, he must, under the general issue, prove his title, as executor, or administrator, if it be essential to his claim; and the defendant may controvert it, under the general issue; for the plea raises the question of title; see II. vol. of Starkie on Evidence, 547-8, and the authorities there cited.
We are, therfore, of opinion, that the motion for a new trial should have been sustained.
The judgment must be reversed, with costs, and the cause remanded to the circuit court; with directions for such further proceedings to be had, as may not be inconsistent with this opinion.